J-A01036-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
       :       PENNSYLVANIA
       :
      v.       :
       :
       :
       :
ANDREW LAWRENCE COOPER   :
       :
     Appellant   :   No. 1436 EDA 2017

Appeal from the Judgment of Sentence December 9, 2016
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s):  CP-46-CR-0006238-2015

BEFORE:   LAZARUS, J., OTT, J., and PLATT[*], J.

MEMORANDUM BY OTT, J.:         **FILED JULY 24, 2018**

Andrew Lawrence Cooper appeals from the judgment of sentence imposed on December 9, 2016, in the Court of Common Pleas of Montgomery County, following his non-jury conviction on charges of aggravated assault, unlawful restraint, simple assault, possession of an instrument of crime (PIC), recklessly endangering another person (REAP),[1] and related charges.[2]  Cooper received an aggregate sentence of 120 to 240 months' incarceration.  In this timely appeal, Cooper challenges the sufficiency of the evidence for the above listed crimes and argues the trial court imposed a manifestly excessive

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a)(1), (4); 2902(a)(3); 2701(a)(3); 907(a); and 2705, respectively.

[2] "The findings by a judge sitting as the trier of fact are entitled to the same weight as a jury verdict." **Commonwealth v. Brown**, 477 A.2d 1364, 1371 (Pa. Super. 1984).

sentence. After a thorough review of the submissions by the parties, the relevant law, and the certified record, we agree with Cooper that there is insufficient evidence to sustain his convictions of aggravated assault with regard to his mother as the victim. In all other respects, our review confirms there is sufficient evidence to support the convictions. Because our ruling disturbs the overall sentencing scheme, we also vacate the sentence and remand for resentencing.

Before we begin our analysis of the sufficiency of the evidence claims, we will relate the underlying facts of this matter as recounted by the trial court in its June 26, 2017, Pa.R.A.P 1925(a) opinion.

> The following events giving rise to [Cooper's] judgment of sentence occurred on July 23, 2015, at the home he lived at with his parents, Lawrence and Sara[3] Cooper, in Lansdale Borough, Montgomery County. [Cooper], who was 27-years-old at the time, had a preliminary hearing scheduled that day in a pending driving under the influence case. He planned to miss the hearing, kill his parents and ambush police, whom he believed would respond to the house to apprehend him after the missed hearing.
>
> Lawrence Cooper ("Mr. Cooper") first made contact that day with his son after awaking at approximately 5:15 a.m. and going downstairs from the master bedroom to make coffee. Mr. Cooper, who planned to accompany [Cooper] to the preliminary hearing, saw [Cooper] sitting in the backyard with a friend. Mr. Cooper told his son he should get some sleep because of the hearing. [Cooper's] friend left a few minutes later and [Cooper] returned to the house.

---

[3] Throughout the record, this name is spelled both "Sara" and "Sarah". We will use "Sara".

Shortly thereafter, [Cooper] emerged from the basement and came into the first-floor living room holding a 7.62 millimeter rifle. Mr. Cooper was in the living room and [Cooper] pointed the rifle in Mr. Cooper's direction. Mr. Cooper asked what [Cooper] was doing, to which [Cooper] responded that he was not going to court and that "this is the day I'm taking you all out." [Cooper] told his father that he had been planning this outcome for four months.[4]

Around this time, Sara Cooper [Mrs. Cooper] came out of the master bedroom and saw one of [Cooper's] guns partially sticking out into the hallway from a spare room in the second floor. The gun was surrounded by a lot of ammunition. Mrs. Cooper went into the hall bathroom and heard her son come upstairs.

[Cooper] went into his bedroom and Mr. Cooper followed him. When Mr. Cooper asked [Cooper] what was going on, [Cooper] hit a lamp pole, causing the bulb to shatter. [Cooper] grabbed a .40 caliber pistol, pointed it in Mr. Cooper's direction and cocked the firearm. He then slapped Mr. Cooper and pushed him up against a wall twice.

Mrs. Cooper heard the light bulb break and came out of the bathroom. Mr. Cooper told her that [Cooper] said he was not going to the hearing. When she asked him why not, [Cooper] said "today is the day. I'm going to take everybody out." When Mrs. Cooper said she did not understand what [Cooper] meant, he responded that "when they come to get me when I don't show up at the hearing, I will be ready for them." He also told his mother that "I have had it. Everybody is gone." He told her she had one hour to leave the house. When she responded that she would not be thrown out of her own house, [Cooper] responded "Well, you have 55 minutes now, get going, or do you want to be first."

During this exchange, Mrs. Cooper saw a firearm leaning up against the radiator in [Cooper's] bedroom. She decided she needed to get out of the house to call for help, so she went into

---

[4] In one of the great understatements, Mr. Cooper testified that after hearing his son's threats, "I figured, oh, well, we got a problem here." N.T. Trial, 3/31/2016, at 12.

her bedroom to get dressed as if she was going out for her usual morning walk.

Mr. Cooper went downstairs and shortly thereafter heard a gunshot coming from his son's bedroom. He called up to [Cooper], who told [him] the noise was nothing. [Cooper] eventually came downstairs into the living room where his parents were and prevented Mr. Cooper from going into the kitchen to get his coffee or from going upstairs to get dressed. Mr. Cooper tried to leave the room in another direction but [Cooper] used his body to block Mr. Cooper's path. Around this time, Mrs. Cooper announced she was going for her walk and left the house.

With the two alone in the house, [Cooper] slugged Mr. Cooper from behind, sending his father into a wooden column. Mr. Cooper suffered a gash to his right wrist. He tried to go upstairs to dress the wound but [Cooper] would not let him go alone. [Cooper] accompanied Mr. Cooper upstairs to put on a Band-Aid.

In the interim, Mrs. Cooper had called 911 from outside the house using her cellular phone. Responding officers suggested she try to get Mr. Cooper out of the house, so she telephoned him under the guise that she had fallen during her walk and needed help. Mr. Cooper answered the call and Mrs. Cooper eventually gave the phone to one of the police officers. The officer spoke briefly with Mr. Cooper before the call was disconnected.

Mrs. Cooper called back and told [Cooper], who had answered the call, that she had fallen and needed help returning to the house. [Cooper] would not let Mr. Cooper go alone and accompanied him outside. Police apprehended [Cooper] near the house. A subsequent search of the residence conducted pursuant to a warrant revealed, *inter alia*, a gun safe in the dining room and a .223 caliber semi-automatic rifle perched on a bipod partially extending from a spare room into the second floor hallway. Police also found a loaded 7.62 millimeter rifle, a loaded shotgun and a loaded .40 caliber semi-automatic pistol in [Cooper's] bedroom, as well as thousands of rounds of ammunition throughout the first and second floors of the house. The search further revealed a spent .40 caliber shell casing in an area near a bullet hole in a wall in [Cooper's] bedroom.

The Commonwealth charged [Cooper] with two counts of aggravated assault (attempt to cause serious bodily injury to each parent), two counts of aggravated assault (attempt to cause bodily injury with a deadly weapon to each parent), two counts of recklessly endangering another person (as to each parent), one count of disorderly conduct, four counts of possession of an instrument of crime, two counts of terroristic threats (as to each parent), one count of unlawful restraint (as to [Cooper's] father) and two counts of simple assault (as to each parent).

Trial Court Opinion, 6/26/2017, at 1-5 (citation to record and footnotes omitted).

Cooper challenges the sufficiency of the evidence for his convictions of aggravated assault, simple assault, unlawful restraint, REAP, and PIC. Our standard of review for a claim of insufficient evidence is as follows:

> "The determination of whether sufficient evidence exists to support the verdict is a question of law; accordingly, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Johnson**, --- Pa. ----, 160 A.3d 127, 136 (2017) (citation omitted). In assessing Appellant's sufficiency challenge, we must determine "whether viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth], there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." **Commonwealth v. Grays**, 167 A.3d 793, 806 (Pa. Super. 2017) (citation omitted). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.... [T]he finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence." **Commonwealth v. Waugaman**, 167 A.3d 153, 155-156 (Pa. Super. 2017) (citation omitted).

**Commonwealth v. Edwards**, 177 A.3d 963, 969-70 (Pa. Super. 2018).

Cooper's first claim is there was insufficient evidence to support his convictions for aggravated assault against his parents. We agree with the trial

- 5 -

court that there was sufficient evidence to support the convictions regarding his father, but we reverse the convictions regarding his mother.

Cooper was charged with violating 18 Pa.C.S. § 2702(a)(1) and (a)(4) as to both his mother and father. Specifically, Section 2702 states, in relevant part:

> **a) Offense defined.--**A person is guilty of aggravated assault if he:
>
> > (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
> >
> > \*\*\*
> >
> > (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon;

18 Pa.C.S. § 2704(a)(1), (4).

There are no allegations that Cooper actually caused serious bodily injury, or bodily injury with a deadly weapon, to either of his parents. However, the statute allows for conviction upon proof beyond a reasonable doubt of the attempt to cause such injury.

> A person may be convicted of Aggravated Assault graded as a first degree felony if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). "Serious bodily injury" has been defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of

any bodily member or organ."  18 Pa.C.S.A. § 2301. For aggravated assault purposes, an "attempt" is found where an "accused who possesses the required, specific intent acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." **Commonwealth v. Gray**, 867 A.2d 560, 567 (Pa. Super. 2005), *appeal denied,* 583 Pa. 694, 879 A.2d 781 (2005). An intent ordinarily must be proven through circumstantial evidence and inferred from acts, conduct or attendant circumstances. [**Commonwealth v.**] **Thomas**, 65 A.3d [939,] at 944 [Pa. Super. 2013], 2013 WL 1319796 at *4.

The Pennsylvania Supreme Court in **Commonwealth v. Alexander**, 477 Pa. 190, 383 A.2d 887 (1978) created a totality of the circumstances test to be used to evaluate whether a defendant acted with the necessary intent to sustain an aggravated assault conviction.

**Commonwealth v. Fortune**, 68 A.3d 980, 984 (Pa. Super. 2013) (*en banc*).

The certified record supports the trial court's determination that the totality of the circumstances proves beyond a reasonable doubt that Cooper both intended and attempted to inflict both serious bodily injury and bodily injury with a deadly weapon, upon his father.  Cooper directly threatened his father, repeatedly aimed firearms at his father, physically assaulted his father, prevented his father from freely moving about the house, and made it clear that he intended to ambush and kill multiple people, including the police. Further, Cooper possessed the wherewithal, to accomplish those threats. Cooper took the active step of moving a gun safe from the basement to the main floor.  He possessed thousands of rounds of ammunition for multiple weapons, including a 12-gauge shotgun, AR-15 semi-automatic rifle mounted on a bi-pod, 7.62 caliber rifle, and a .40 caliber semi-automatic handgun.  We

- 7 -

affirm the trial court's determination of sufficient evidence to sustain both counts of aggravated assault as to Cooper's father.

The record does not provide the same clear evidence as to Cooper's mother. At most, Cooper's direct threat toward his mother was conditional when he told her to leave the home adding, "or do you want to be first." N.T. Trial, 3/31/2016, at 37. Cooper did not point any weapons at his mother, physically assault her, or hinder her movements throughout the house, but rather he let her leave the house, and attempted to help her when she claimed to have fallen. While there is evidence that he put his mother at risk and that she was generally threatened with harm, the totality of the circumstances does not support a finding that Cooper intended or attempted to cause her serious bodily injury or bodily injury with a deadly weapon. Accordingly, Cooper's convictions of aggravated assault under section 2702(a)(1) and (a)(4) must be reversed, as to his mother.

Cooper also challenges his convictions of unlawful restraint (father), simple assault (mother), reckless endangerment (both parents), and PIC. In these instances, our review of the certified record leads us to conclude the trial court committed no error in sustaining the convictions. We believe the trial court adequately addressed these claims in it Pa.R.A.P. 1925(a) opinion,

and, accordingly, we rely thereon.[5] **See** Trial Court Opinion, 6/26/2017 at 12-15. The parties are directed to attach a copy of the trial court opinion, in the event of further proceedings.

Finally, Cooper challenges the discretionary aspect of his sentence, alleging the trial court imposed a manifestly harsh and excessive sentence on each count. Cooper received an aggregate sentence of 120 to 240 months' incarceration. Relevant to this issue, he received a 40 to 80 month term for aggravated assault attempted serious bodily injury, Count 2, and 16 to 32 months for aggravated assault attempted injury with a deadly weapon, Count 4, regarding his mother as the victim. However, we have reversed both of these convictions, thereby upsetting the overall sentencing scheme. This requires we vacate the judgment of sentence and we remand the matter for

---

[5] We also note that at trial, in the closing argument, counsel agreed that there was sufficient evidence to support the convictions for the charges listed above, stating:

> …the argument is while he has committed terroristic threats, while he has committed reckless endangerment, possession of an instrument of crime, and the litany of other misdemeanor charges, I do not believe that there has been proven beyond a reasonable doubt the specific intent to shoot his parents, which is the gist of the aggravated assault charges.

N.T. Trial, 3/31/2016 at 79.

resentencing.[6] ***See Commonwealth v. Motley***, 177 A.3d 960, 963 (Pa. Super. 2018) (where disposition upsets overall sentencing scheme, our Court vacates judgment of sentence in entirety and remands for resentencing).

Convictions regarding Counts 2 and 4, 18 Pa.C.S. § 2702(a)(1), (a)(4) – Sara Cooper as the victim – are reversed. All other convictions are affirmed. Judgment of sentence is vacated in its entirety. This matter is remanded for resentencing. Jurisdiction relinquished.

Judge Lazarus joins this memorandum.

Judge Platt files a concurring and dissenting statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/24/18

---

[6] For purposes of clarity in resentencing, at the original sentencing hearing on December 9, 2016, the Commonwealth, in arguing for a strict sentence, inadvertently misstated the trial evidence, claiming: "including an assault rifle with a bipod that was focused at a reverse angle on the stairs so that any person coming up the stairs would be in an angle of fire they would not anticipate and would not see." N.T. Sentencing, 12/9/2016 at 17.

Detective Sergeant Michael B. Trail, the Lansdale police officer who executed the search warrant on the Cooper residence, specifically denied that any of the weapons found in the house were set up or aimed in any particular fashion. ***See*** N.T. Trial, 3/31/2016, at 73. ***See also*** Commonwealth Exhibit C-6, depicting the rifle lying on the ground pointing at a vacuum cleaner.

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY,
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF  :  No. 6238-15
PENNSYLVANIA  :
  :
  :
  v.  :
  :
ANDREW W. COOPER  :

OPINION

SILOW, J.  JUNE 26, 2017

Andrew W. Cooper ("defendant") appeals from the judgment of sentence

imposed after he was found guilty following a trial by judge of four counts of

aggravated assault and related offenses. For the reasons set forth below, the

judgment of sentence should be affirmed.

I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following events giving rise to defendant's judgment of sentence

occurred on July 23, 2015, at the home he lived at with his parents, Lawrence

and Sara Cooper, in Lansdale Borough, Montgomery County. Defendant, who

was 27-years-old at the time, had a preliminary hearing scheduled that day in

a pending driving under the influence case. He planned to miss the hearing,

kill his parents and ambush police, whom he believed would respond to the

house to apprehend him after the missed hearing.

Lawrence Cooper ("Mr. Cooper")[1] first made contact that day with his son

after awaking at approximately 5:15 a.m. and going downstairs from the

---

[1] Mr. Cooper was in his early seventies at the time.

master bedroom to make coffee. Mr. Cooper, who planned to accompany defendant to the preliminary hearing, saw defendant sitting in the backyard with a friend. (N.T., 3/31/16, p. 10) Mr. Cooper told his son he should get some sleep because of the hearing. Defendant's friend left a few minutes later and defendant returned to the house.

Shortly thereafter, defendant emerged from the basement and came into the first-floor living room holding a 7.62 millimeter rifle. *Id.* at 11. Mr. Cooper was in the living room and defendant pointed the rifle in Mr. Cooper's direction. *Id.* at 11-12. Mr. Cooper asked what defendant was doing, to which defendant responded that he was not going to court and that "this is the day I'm taking you all out." *Id.* at 11. Defendant told his father he had been planning this outcome for four months. *Id.* at 12.

Around this time, Sara Cooper[2] (Mrs. Cooper) came out of the master bedroom and saw one of defendant's guns partially sticking out into the hallway from a spare room on the second floor. The gun was surrounded by a lot of ammunition. *Id.* at 35. Mrs. Cooper went into the hall bathroom and heard her son come upstairs.

Defendant went into his bedroom and Mr. Cooper followed him. When Mr. Cooper asked defendant what was going on, defendant hit a lamp pole, causing the bulb to shatter. *Id.* at 12. Defendant grabbed a .40 caliber pistol, pointed it in Mr. Cooper's direction and cocked the firearm. *Id.* He then slapped Mr. Cooper and pushed him up against a wall twice. *Id.* at 13.

---

[2] Mrs. Cooper was in her mid-sixties at the time of the incident.

2

Mrs. Cooper heard the light bulb break and came out of the bathroom. Mr. Cooper told her that defendant said he was not going to the hearing. When she asked why not, defendant said "today is the day. I'm going to take everybody out." *Id.* at 36. When Mrs. Cooper said she did not understand what defendant meant, he responded that "when they come to get me when I don't show up at the hearing, I will be ready for them." *Id.* He also told his mother that "I have had it. Everybody is gone." *Id.* He told her she had one hour to leave the house. When she responded that she would not be thrown out of her own house, defendant responded "Well, you have 55 minutes now, get going, or do you want to be first." *Id.* at 37.

During this exchange, Mrs. Cooper saw a firearm leaning up against the radiator in defendant's bedroom. *Id.* at 36. She decided she needed to get out of the house to call for help, so she went into her bedroom to get dressed as if she was going out for her usual morning walk. *Id.* at 37.

Mr. Cooper went downstairs and shortly thereafter heard a gunshot coming from his son's bedroom. *Id.* at 13. He called up to defendant, who told Mr. Cooper the noise was nothing. Defendant eventually came downstairs into the living room where his parents were[3] and prevented Mr. Cooper from going into the kitchen to get his coffee or from going upstairs to get dressed. *Id.* at 13-14. Mr. Cooper tried to leave the room in another direction but defendant

---

[3] Mrs. Cooper had since come downstairs and was putting on her sneakers in the living room.

3

used his body to block Mr. Cooper's path. Around this time, Mrs. Cooper announced she was going for her walk and left the house.

With the two alone in the house, defendant slugged Mr. Cooper from behind, sending his father into a wooden column.[4] *Id.* at 14. Mr. Cooper suffered a gash to his right wrist. He tried to go upstairs to dress the wound but defendant would not let him go alone. *Id.* at 15. Defendant accompanied Mr. Cooper upstairs to put on a Band-Aid.

In the interim, Mrs. Cooper had called 911 from outside the house using her cellular phone. Responding officers suggested she try to get Mr. Cooper out of the house, so she telephoned him under the guise that she had fallen during her walk and needed help. *Id.* at 40. Mr. Cooper answered the call and Mrs. Cooper eventually gave the phone to one of the police officers. The officer spoke briefly with Mr. Cooper before the call was disconnected.

Mrs. Cooper called back and told defendant, who had answered the call, that she had fallen and needed help returning to the house. *Id.* Defendant would not let Mr. Cooper go alone and accompanied him outside. Police apprehended defendant near the house. A subsequent search of the residence conducted pursuant to a warrant revealed, *inter alia*, a gun safe in the dining room and a .223 caliber semi-automatic rifle perched on a bipod partially extending from a spare room into the second-floor hallway. *Id.* at 63-65. Police

---

[4] At some point after Mrs. Cooper left the house, and before defendant injured his father's wrist, defendant had carried a gun safe from the basement up to the dining room.

also found a loaded 7.62 millimeter rifle, a loaded shotgun and a loaded .40 caliber semi-automatic pistol in defendant's bedroom, as well as thousands of rounds of ammunition throughout the first and second floors of the house. *Id.* at 63-69. The search further revealed a spent .40 caliber shell casing in an area near a bullet hole in a wall in defendant's bedroom. *Id.* at 68.

The Commonwealth charged defendant with two counts of aggravated assault (attempt to cause serious bodily injury to each parent),[5] two counts of aggravated assault (attempt to cause bodily injury with a deadly weapon to each parent),[6] two counts of recklessly endangering another person (as to each parent),[7] one count of disorderly conduct,[8] four counts of possession of an instrument of crime,[9] two counts of terroristic threats (as to each parent),[10] one count of unlawful restraint (as to defendant's father)[11] and two counts of simple assault (as to each parent).[12]

---

[5] 18 Pa. C.S. § 2702(a)(1) – Counts 1 and 2.

[6] 18 Pa. C.S. § 2702(a)(4) – Counts 3 and 4.

[7] 18 Pa. C.S. § 2705 – Counts 5 and 6.

[8] 18 Pa. C.S. § 5503(a)(4) – Count 7.

[9] 18 Pa. C.S. § 907(a) – Counts 8 through 11.

[10] 18 Pa. C.S. § 2706(a)(1) – Counts 12 and 13.

[11] 18 Pa. C.S. § 2902(a)(3) – Count 14.

[12] 18 Pa. C.S. § 2701(a)(3) – Counts 15 and 16.

5

Defendant proceeded to a trial by judge, at the conclusion of which he conceded through counsel that the evidence sufficed to prove he committed all of the charged offenses, with the exception of the four aggravated assaults. *Id.* at 78-79, 85. This court found defendant guilty of all charges.

At defendant's subsequent sentencing hearing, he again acknowledged through counsel the sufficiency of the evidence with regard to all but the aggravated assault charges. (N.T., 12/9/16, p. 15) ("If you recall from trial, there was no argument that he didn't engage in the conduct charged. The argument merely was a legal argument that it was not to the level of an aggravated assault attempt to cause serious bodily injury. And that was all.").

This court imposed sentences of 40 to 80 months on Count 1, 40 to 80 months on Count 2, 16 to 32 months on Count 3, 16 to 32 months on Count 4, 1 to 2 months on Count 8, 1 to 2 months on Count 9, 7 to 14 months on Count 12 and 7 to 14 months on Count 13.[13] The sentences, which were set to run consecutively with the exception of Counts 9 and 13, aggregated to 120 to 240 months in prison.

Defendant retained new counsel and filed a post-sentence motion, which he later supplemented. Despite the prior representations at trial and sentencing, he challenged, *inter alia*, the sufficiency of the evidence for all of the offenses, except two counts of terroristic threats, simple assault against his father and disorderly conduct. The Commonwealth filed a response and this

---

[13] Counts 15 and 16 merged for purposes of sentencing and this court imposed no further penalty on Counts 5, 6, 7, 10, 11 and 14.

6

court denied the post-sentence motion after oral argument. Defendant appealed to the Pennsylvania Superior Court and subsequently produced a concise statement of errors in accordance with Pennsylvania Rule of Appellate Procedure 1925(b).

## II.   ISSUES

Defendant raises the following issues in his concise statement:

1.   Whether the trial court erred in denying [defendant's] Motion for Judgment of Acquittal on the two (2) counts of Aggravated Assault because the Commonwealth failed to establish that [defendant] attempted to intentionally cause serious bodily injury to both of his parents in that the evidence is insufficient to establish that [defendant] possessed a present, specific intent to cause serious bodily injury or death to his parents as required by 18 Pa.C.S. § 2702(a)(1)?

2.   Whether the trial court erred in denying [defendant's] Motion for Judgment of Acquittal on the two (2) counts of Aggravated Assault because the Commonwealth failed to prove that defendant attempted to intentionally cause bodily injury to both of his parents with a deadly weapon in that the evidence is insufficient to establish that defendant possessed a present, specific intent to cause bodily injury with a deadly weapon as required by 18 Pa.C.S. § 270[2](a)(4)?

3.   Whether the trial court erred in denying [defendant's] Motion for Judgment of Acquittal on the one (1) count of Unlawful Restraint because the Commonwealth failed to establish that [defendant] knowingly restrained his father in circumstances exposing him to risk of serious bodily injury, in that the evidence was insufficient to establish that defendant restrained [his father] for a significant period of time as required by 18 Pa.C.S. § 2902(a)(1)?

4.   Whether the trial court erred in denying [defendant's] Motion for Judgment of Acquittal on the one (1) count of Simple Assault, as charged for his conduct against his mother, in that the Commonwealth failed to establish that [defendant]

7

possessed a present, specific intent to cause bodily injury to his mother as required by 18 Pa.C.S. § 2701(a)(3)?

5. Whether the trial court erred in denying [defendant's] Motion for Judgment of Acquittal on the two (2) counts of Recklessly Endangering Another Person because the Commonwealth failed to establish that [defendant] recklessly created a risk of death or serious bodily injury to his parents, in that the evidence is insufficient to establish that [defendant's] parents were in imminent risk of serious bodily injury or death?

6. Whether the trial court erred in denying [defendant's] Motion for Judgment of Acquittal on four (4) counts of Possession of an Instrument of Crime because the Commonwealth failed to establish that [defendant] unlawfully possessed the .40 caliber handgun, 12 gauge shotgun, .223 rifle, and 7.62 rifle with an intent to employ each of them criminally?

7. Whether this Honorable Court abused its discretion in imposing such a harsh and excessive sentence when sentencing [defendant] on each count consecutively when [defendant] has no prior record, no history of violence, was only twenty-seven (27) years old at the time of the incident, and the incident occurred within the confines of his home?

8. Whether this Honorable Court failed to adequately consider mitigating evidence of [defendant's] history of mental illness and intoxication at the time of the incident before imposing the sentence?

## III. DISCUSSION

### 1. The evidence supports defendant's aggravated assault convictions.

Defendant contends this court should have granted his motion for judgment of acquittal on the four charges of aggravated assault because the evidence did not establish a present, specific intent to cause serious bodily injury or death to both of his parents, as required under 18 Pa. C.S. § 2702(a)(1), or a present, specific intent to cause bodily injury with a deadly

8

weapon, as required under § 2702(a)(4). The record from the bench trial belies these claims.

When reviewing a challenge to the sufficiency of the evidence, the Superior Court:

> evaluate[s] the record in the light most favorable to the Commonwealth as the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. Moreover, [the Superior Court does] not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed. Lastly, … the finder of fact is free to believe some, all, or none of the evidence presented.

*Commonwealth v. Taylor*, 33 A.3d 1283, 1287-1288 (Pa. Super. 2011) (quoting *Commonwealth v. Yasipour*, 957 A.2d 734, 745 (Pa. Super. 2008) (internal quotations marks and citations omitted).

A person commits the offense of aggravated assault under 18 Pa. C.S. § 2702(a)(1) where he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life…." *Id.* The Crimes Code defines "serious bodily injury" to mean "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa. C.S. § 2301. A person may be found guilty of aggravated assault under

9

Section 2702(a)(4) where he "attempts to cause ... bodily injury to another with a deadly weapon." *Id.*

"A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). The attempt statute further provides that "[i]t shall not be a defense to a charge of attempt that because of a misapprehension of the circumstances it would have been impossible for the accused to commit the crime attempted." *Id.* at § 901(b).

Our Supreme Court has stated that courts should use a "totality of the circumstances" test to determine on a case-by-case basis whether a defendant possessed an intent to inflict serious bodily injury. See *Commonwealth v. Matthew*, 909 A.2d 1254, 1257 (Pa. 2006) (citing *Commonwealth v. Alexander*, 383 A.2d 887 (Pa. 1978)). The *Matthews* Court explained that:

> *Alexander* provided a list, albeit incomplete, of factors that may be considered in determining whether the intent to inflict serious bodily injury was present, including evidence of a significant difference in size or strength between the defendant and the victim, any restraint on the defendant preventing him from escalating the attack, the defendant's use of a weapon or other implement to aid his attack, and his statements before, during, or after the attack which might indicate his intent to inflict injury. *Alexander* made clear that 'simple assault combined with other surrounding circumstances may, in a proper case, be sufficient to support a finding that an assailant attempted to inflict serious bodily injury, thereby constituting aggravated assault....'

*Matthew*, 909 A.2d at 1257 (quoting *Alexander*, 383 A.2d at 889-890.

10

Here, defendant's words and actions, combined with the surrounding circumstances as detailed above, demonstrated proof beyond a reasonable doubt of his state of mind on the morning in question. Defendant intended to kill his parent and ambush the police he believed would come to his home after he missed his preliminary hearing. He told his parents, while in close proximity to firearms, that he planned to take everyone out, including them. He pointed a firearm on more than one occasion at Mr. Cooper. He prevented Mr. Cooper from walking freely around the interior of the house and from leaving the residence. He hit Mr. Cooper several times, launching him at one point into a wooden column in the house. He brought a gun safe containing a firearm and ammunition into the dining room and positioned other firearms and ammunition throughout the upstairs of the house in furtherance of his intended plan to kill his parents and police.

This is not a case where the Commonwealth is attempting to elevate a simple assault to an aggravated assault. This is not a case where defendant simply attempted to scare his parents as a means to another end. Taking defendant at his own words, he intended to kill them and police officers and took substantial steps in furtherance of his intention. That defendant now wants the court to take a narrow, piecemeal view of his actions is a self-serving attempt to diminish the gravity of his conduct. That he eventually allowed his mother to go for her daily walk, while continuing to plan his assault and hold his father hostage, does not ameliorate his prior actions when she was still in the house. Before his mother left, he took substantial steps in an attempt to

11

cause serious bodily injury to both of his parents and to cause bodily injury to them using a deadly weapon. He is guilty of the four charged aggravated assault offenses.

**2. Defendant committed the offense of unlawful restraint.**

Defendant also argues he did not commit the offense of unlawful restraint because the evidence did not show he restrained his father "for a significant period of time." *Concise Statement*, ¶ 3. This claim fails.

Assuming defendant is permitted to pursue this challenge, as well as the others *infra*, despite the representations made at trial and sentencing with regard to the sufficiency of the evidence, a person commits the offense of unlawful restraint where he, *inter alia*, knowingly "restrains another unlawfully in circumstances exposing [the other person] to risk of serious bodily injury." 18 Pa. C.S.A. § 2902(a)(1). Notwithstanding defendant's assertion in his concise statement about the lack of a "significant period of time," Section 2902(a)(1) does not contain a temporal requirement. Moreover, the evidence credited by this court demonstrates that defendant restrained his father's movement inside the house – a house filled at the time with loaded firearms, threats of death and actual physical violence – over the course of a nearly one-hour period. While that span of time may not seem "significant" in the quiet of a law firm office drafting a concise statement, a fair inference from the evidence is that it may have seemed quiet long enough for Mr. Cooper. The evidence amply demonstrates defendant committed the offense of unlawful restraint.

12

### 3. The evidence supports defendant's conviction for simple assault against his mother.

Defendant next asserts that the evidence does not support the simple assault conviction related to his mother because he did not possess the present, specific intent to cause her bodily injury. The evidence suffices.

A person commits simple assault under 18 Pa. C.S. § 2701(a)(3) where he "attempts by physical menace to put another in fear of imminent serious bodily injury." *Id.*

The evidence credited by this court demonstrates that defendant's conduct placed his mother in fear of imminent serious bodily injury. Indeed, Mrs. Cooper testified credibly that she believed she had to flee the home to get help because of defendant's threatening behavior. That behavior included stockpiling firearms and ammunition around the house while telling Mrs. Cooper and her husband that he was going to kill them and ambush police. Defendant's self-serving post-sentence characterization of his words and actions does not warrant relief.

### 4. Defendant recklessly endangered his parents.

Defendant contends that he did not recklessly endanger his parents because the evidence does not show they were in imminent risk of serious bodily injury or death. This claim lacks merit.

A person commits the offense of recklessly endangering another person where he "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa. C.S.A. § 2705. "The *mens rea* for the crime of recklessly endangering another person is a 'conscious

13

disregard of a known risk of death or great bodily injury to another person.'" *Commonwealth v. Fabian*, 60 A.3d 146, 155 (Pa. Super. 2013) (citation omitted). "[T]he Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so." *Commonwealth v. Martuscelli*, 54 A.3d 940, 949 (Pa. Super. 2012) (citation omitted).

The evidence presented by the Commonwealth, and credited by this court, amply demonstrates beyond a reasonable doubt that defendant had an actual, present ability to inflict harm on his parents. While threatening them with death, he stockpiled the second-floor of the house with firearms and ammunition and pointed a firearm in Mr. Cooper's direction on more than one occasion. This is not an incident where defendant merely was trying to scare his parents. He told them he planned to kill them while taking measures to do so. He is not entitled to relief on this claim.

## 5. Defendant possessed instruments of crime.

Defendant's final challenge to the trial evidence against him relates to whether the Commonwealth established that he unlawfully possessed with the intent to employ criminally the .40 caliber handgun, 12-guage shotgun, .223 rifle and the 7.62 rifle. It did.

A person violates 18 Pa. C.S. § 907(a) where he "possesses any instrument of crime with intent to employ it criminally." *Id.* The direct and circumstantial evidence credited by this court demonstrates beyond a reasonable doubt that defendant possessed all four firearms with the intent,

14

borne out by his own words, to kill his parents and ambush police. He is guilty of all four counts.

### 6. Defendant is not entitled to relief on his challenge to discretionary aspects of his sentence.

Defendant's remaining two issues relate to the discretionary aspects of his sentence. Neither entitles him to relief.

The Superior Court employs a well-established standard of review when a defendant raises a challenge to the discretionary aspects of his sentence:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014). Where, as here, the sentencing court had the benefit of a presentence investigation report, it is assumed to have been "aware of relevant information regarding the defendant's character and [to have] weighed those considerations along with mitigating statutory factors." *Commonwealth v. Antidormi*, 84 A.3d 736, 761 (quoting *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988)). The sentencing court has the discretion to impose sentences consecutively. *See* 42 Pa. C.S. § 9721. The right to appeal the discretionary aspects of a sentence is not absolute. *Antidormi*, 84 A.3d at 759 (quoting *Commonwealth v. Austin*, 66 A.3d

15

798, 807-08 (Pa. Super. 2013)). Rather the defendant must raise a substantial question regarding the appropriateness of the sentence. *Id.*

As an initial matter, defendant has not preserved his challenge to his sentences being imposed consecutively. His post-sentence motion addressed only this court's alleged failure to consider certain mitigating factors, resulting in what he characterized as an excessive and harsh sentence. As such, he has waived for purposes of appellate review his claim about the consecutive nature of his sentences. *See Commonwealth v. Felder*, 75 A.3d 513, 515 (Pa. Super. 2013) (failure to raise challenge to discretionary aspect of sentence in the first instance before the trial court, either at the time of sentencing or in a post-sentence motion results in waiver of the claim) (internal citations omitted).[14]

Defendant's preserved claim that this court did not consider certain mitigating evidence is not supported by the record. This court had the benefit of a pre-sentence investigation report and was aware of defendant's age, background and the circumstances surrounding the offenses. This court considered all of that information, as well as the other evidence presented at the sentencing hearing, in fashioning defendant's sentence. (N.T., 12/9/16, pp. 28, 31-36)

---

[14] Even had defendant preserved a challenge to the imposition of consecutive sentences, this court is authorized to do so by 42 Pa. C.S. § 9721 and amply explained the reasons for the sentence imposed. (N.T., 12/9/16, pp. 28, 31-36)

16

## V.    CONCLUSION

Based upon the foregoing, defendant's judgment of sentence should be affirmed.

BY THE COURT:

_____
GARY S. SILOW,          J.

Sent on 6/26/17
to the following:
Clerk of Courts (original)
District Attorney's Office
John I. McMahon, Jr., Esquire

Judicial Secretary

17